[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This custodial dispute, arising within a dissolution action, involves a plaintiff husband, aged 34, and a defendant wife, aged 26, who married in Ledyard, Connecticut, five years ago, on January 10, 1987. It was his first marriage, her second. Both parties have been residents of this state for at least the twelve months next preceding the filing of the complaint.
Two minor children have been born of this marriage: Jessica Rowley, born September 19, 1987, four years of age, Brenda Rowley, born April 7, 1989, two years of age.
No other minor children have been born to the wife since the date of the marriage. No individual or agency is presently responsible by virtue of judicial award for the custody or support of any child. The State of Connecticut has contributed to the support and maintenance of the wife and the children.
This action has involved a total of eight attorneys, more than fifty preliminary filings which resulted in ten orders or agreements before six judges and concluded in a four day trial before this court. A total of twelve witnesses participated. There were seven referrals to the Department of Children and Youth Services, claiming abuse. One referral was substantiated.
Clearly these parties have an adversarial focus considerably beyond the norm and have succeeded in usurping a disproportionate share of services available to the community.
This court hopes that their predilection for continuing confrontation and their appetite for repetitive involvement with the police, DCYS, the courts and the mental health and medical communities will be minimized in the future. CT Page 175
Attorney Lynda Batter Munro represented the plaintiff father.
Attorney Patricia Modzeleweski represented the defendant mother.
Attorney Gail Barto represented the State of Connecticut.
Robert D. Meier, Ph.D., was the court appointed evaluator.
Sharon Kesten was the Family Relations Counselor.
The court wishes to express its appreciation to those just cited for the high professional manner in which they performed their services. Behavior in the courtroom never degenerated into gratuitously damaging harsh language. These principal professional participants, though focused on their roles, and effective in those roles, never exceeded reasonable bounds. They performed their roles with commendable skill and dignity.
FINDINGS:
CUSTODY
With the exception of the court ordered evaluator, the Family Relations Counselor and the DCYS representative, the witnesses offered to the court were often unable to provide information relevant to the custodial issue or were so committed to their sponsor that their information was suspect.
The court was offered evidence by the plaintiff and his mother. Defendant mother testified and offered her boy friend, two friends, one of whom was a member of her support group, an AA colleague whose testimony centered largely about a detailed description of Alcoholics Anonymous and its twelve steps, her inpatient therapist at Backus Hospital who unabashedly described herself as Debra's "advocate" and committed herself overwhelmingly to that role — thus denying the court any assistance a more objective witness might have provided, one of her mental health workers at Backus Hospital and her children's recent therapist who first saw the children in October of 1991, a scant three months before the trial began. She was obviously competent, but she was unable to offer evidence relevant to the primary issue of child custody.
The court was guided chiefly by its opportunity to observe each spouse during their direct and cross examinations and by the testimony of the three professionals, none of whom were in the employ of either party or responsible for their care. None of the three professionals, Dr. Meier, Counselor Kesten or DCYS worker Marilyn Williams advocated for either party. CT Page 176 They testified impartially, offering the facts as they found them, and presented their conclusions based on those facts. They dealt with the challenges of cross examination candidly.
The court found the plaintiff father to be the more credible of the two parents.
Robert D. Meier, Ph.D., was appointed by the court to produce a psychological evaluation of the principals in response to a motion by the counsel for the minor children.
Dr. Meier found:
— neither parent demonstrated any seriously disturbed behavior — father demonstrated a greater ability to discipline the children effectively, — father clearly had a more accurate perception of the children's level of development and was more realistic about expectations of their behavior, — the children seemed to be attached to both parents and were able to relate to both parents.
Dr. Meier recommended that primary custody be granted to the plaintiff father based upon the following observations, among others:
a. the relative stability of the children's present placement (with plaintiff father),
b. the lack of any clear validation of allegations regarding physical abuse,
c. the supportive role of paternal grandparents in father's home,
d. mother's clearly limited awareness of the children's developmental level and needs, and
e. mother's frequent absence from the children in the past.
Dr. Meier's recommendation that the non-custodial mother see the children "at least three times per week and have the children for over-night visits on alternating weekends," was modified by the psychologist during his cross examination. He agreed that such a schedule, virtually alternating the children daily between their parents' homes, would be disorienting for children of such a tender age.
Family Relations Counselor Sharon Kesten provided an evaluation and custodial recommendation. In a detailed report that included a chronology of the path leading to the current court trial, Counselor Kesten concluded that father seems to be the more stable of the two parents and that father represented the greater prospect for the stability the children needed. CT Page 177
She recommended that a change in the basic current parenting plan did not seem warranted — father should have custody of the minor children.
Counselor Kesten interviewed Corrine Johnson, mother of plaintiff father, and found her to be credible. Corrine Johnson was a major target in the defendant's attempt to gain custody and assign marital blame. The endorsement of Corrine Johnson's credibility by Counselor Kesten was meaningful.
Counselor Kesten was concerned that defendant mother denied her alcohol addiction as well as her suicide attempt, a concern shared by the court.
Marilyn Williams, an intake social worker at DCYS, reported on the seven, yes, seven, referrals to DCYS. Only one of the seven referrals was substantiated.
The April 11, 1988 referral involved Debra's son by her first marriage, Christopher. The claim that plaintiff struck Christopher was substantiated.
The sixth referral, August 15, 1991, also involved Christopher. It involved the issue of whether Christopher had molested the two young girls. No substantiation was found. The report, however, does state:
 ". . . it is apparent Debra is no providing adequate supervision of the children during visitation. The girls did refer to Christopher initiating inappropriate touching."
Marilyn Williams, of DCYS, testified that she personally investigated this inquiry. She authored the quotation and was available for cross examination.
On February 24, 1990, defendant mother had a drug/alcohol related automobile accident. It was characterized as a suicide attempt at William Backus Hospital where she was hospitalized in their psychiatric ward until April 4, 1990. Her thirty one brief suicide notes were found and entered into evidence.
Dr. Meier describes defendant mother as requiring continuous attention to her recovery from alcohol abuse. Defendant mother, when interviewed by Counselor Kesten, denied her alcoholism, and while testifying during trial, seemed unwilling to deal with it sincerely. She also denied her suicide attempt, referring to it simply as an automobile accident.
Debra Rowley is not an appropriate custodial parent, given CT Page 178 the alternative available for the young girls, her history and her current status and behavior.
One parent sought an order of joint custody. Because both parents did not request joint custody, 46b-56a does not apply, and joint custody is not a presumption.
The circumstances of this dispute, its history, the quality and thoroughness of the evaluators, the quality of those evaluations, the substantial number of witnesses offered and the thoroughness with which all witnesses were examined by competent counsel strongly suggests that minor variations in future circumstances are not likely to alter the best interests of these children with regard to custody.
Future authorities are urged to consider the tenacious adversarial history of these parties which has resulted in repeated referrals to governmental and medical services and in the generation of chaos for the two little girls.
Enough is enough.
Pascal v. Pascal, 2 Conn. App. 472 (1984) at pages 477-478, states:
 The court's broad discretion to modify custody orders is limited by the requirement that such modifications be based upon `either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child.' Citations omitted.
This court submits to future judicial inquiries that the second condition was exhausted during this hearing insofar as custody is concerned. Access may become a more malleable issue with the passage of time.
FINANCES:
The court finds plaintiff father receives $410 net per week from Workman's Compensation. Defendant mother is unemployed but has an earning capacity, which the court minimally finds to be a net of $150 per week. Mother currently receives $178 a week from AFDC and food stamps for Christopher, her son by her previous marriage.
Plaintiff's debts total $12,114. Defendant's debts total $8500. CT Page 179
Defendant has no other assets. Plaintiff has a 1988 Chevrolet pickup truck with a $1500 loan balance, a $500 motorboat and a $50 checking account balance. He also has a workman's compensation claim that has not yet been resolved.
ORDERS:
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following orders shall apply:
1. CUSTODY:
Plaintiff father shall have custody of the two minor children of the marriage.
2. ACCESS
Defendant mother shall reasonable rights of access to the minor children, which shall include, but not necessarily be limited to the following:
a. alternate weekends, from Saturdays at 9 am to Sundays at 6 pm.
b. alternate Wednesdays during each intervening week, from 3 pm until 7 pm.
3. HOLIDAYS AND VACATIONS
a. Parents shall alternate Memorial Day, July 4th, Easter Sunday, Labor Day, Thanksgiving and the girl's birthdays. Father will establish the alternating schedule.
b. Mother shall have Mother's Day and Christmas Day. Christmas Day shall be from 10 am until 6 pm. Father shall have Father's Day and Christmas Eve.
c. Mother shall have two non-consecutive vacation weeks with the children during the summer months.
d. Father shall have access to the children during the February or winter school vacation.
e. Mother shall have access to the children during the spring school vacation. CT Page 180
f. The court specifically empowers, and encourages, the parents to vary any portion of the access, holidays and vacations in any mutually agreeable manner.
4. INFORMATION
a. Father shall keep mother informed of all major developments involving the childrens' health, education and welfare.
b. The court notes, and hereby quotes, the provisions of 46b-56 (e) of the Connecticut General Statutes:
 "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child unless otherwise ordered by the court for good cause shown."
This court enters no orders contrary to this right of access and, further, directs plaintiff father to comply with the letter and with the spirit of this right.
c. Father shall notify all academic and health providers of mother's name and address and of her rights to their records.
5. TELEPHONE ACCESS
a. Mother shall have access to the children by telephone, at a time reasonably convenient to her, on alternate days between mother's access days.
b. The telephone schedule is to be established by the parents.
c. No answering machine shall be permitted to thwart mother's telephone access.
6. CHILD SUPPORT
a. Mother's net earning capacity of $150 a week would normally require a support payment of $65.60 a week.
b. However, the non-custodial parent's self support reserve of $135 established by the Child Support Guidelines reduces the amount available from the non-custodial mother to $15 a week at this time.
3. Defendant mother shall pay plaintiff father $15 per week as child support beginning thirty days from this date. CT Page 181
4. Defendant mother shall notify plaintiff father of her employment immediately upon gaining same, and shall continue to keep him informed of changes in her income immediately as they occur.
7. ALIMONY
Neither party shall pay alimony to the other.
8. MEDICAL INSURANCE
a. The parties shall share equally all costs of the children's uninsured medical, dental, prescription, orthodontic and mental health care.
b. Neither party is currently employed and, thus, neither party has access to an employment health insurance plan.
c. At such time as either party is employed and gains access to an employment health insurance plan, or otherwise obtains health insurance, that party shall cover the children under such plan and notify the other party of same.
9. TAX EXEMPTION FOR THE MINOR CHILDREN
a. Plaintiff father shall be entitled to claim both children as his tax exemptions.
b. Defendant mother will sign all the documents necessary to effectuate father's use of those tax exemption upon presentation of same.
10. PERSONALTY
Each person shall keep any and all items of personal property currently in their possession.
11. LIABILITIES
a. To the extent liability therefore exists, the parties shall be equally responsible for all medical bills listed on their sworn financial affidavits.
b. When collection procedures are pursued by Citicorp, the parties shall share that debt equally.
A workman's compensation award, if any, to be received by plaintiff father shall be retained by him and is not to be divided with the defendant mother. CT Page 182
12. COUNSEL FOR THE MINOR CHILDREN
a. Counsel for the minor children, Patricia Modzelewski, is awarded $16,538.75 for her services.
b. Each party is directed to pay one half of that fee.
13. THE STATE OF CONNECTICUT
a. Gail Barto of the Attorney General's office has agreed that plaintiff husband has no indebtedness to the State of Connecticut, but, rather, is due a refund from the State of Connecticut of an amount between $200 and $400.
b. The State of Connecticut is directed to refund all sums garnished from Mr. Rowley since September 4, 1990 with all reasonable speed.
14. NEGOTIATIONS
a. The court recognizes that the parties may have mutual preferences that have not been revealed to the court during the trial or which the court may have otherwise inadvertently thwarted.
b. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore, the court empowers the parties to confer and to seek mutually acceptable variations of the court's orders.
c. Any such mutually negotiated modifications are to be submitted directly to the undersigned in written form, signed by all three counsel as well as the plaintiff and the defendant not later than thirty days after this judgment, without costs and without the need to establish a substantial change of circumstances.
d. Beyond that date, or before any other court, modifications shall be by the traditional route and must meet all the more formal requirements.
15. APPEAL
All foregoing orders with respect to custody and visitation shall stand and operate as interim orders of this court during the tendency of any appeal.
JOSEPH L. STEINBERG, J. CT Page 183